UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-CR-227 (JEB) |
| | : | |
| ANDREW RYAN BENNETT, | : | |
| *Defendant.* | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence defendant Andrew Ryan Bennett to three months of home confinement, a probationary term of three years, 60 hours of community service, and $500 in restitution.

### I.  Introduction

Bennett participated in the January 6, 2021, attack on the United States Capitol – a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured over 100 law-enforcement officers, and resulted in over $1.4 million worth of property damage.

The government's recommendation of three months of home confinement is based on a careful evaluation of the defendant's conduct on January 6, and his statements before and after his breach of the Capitol.  Bennett espoused conspiracy theories about the election, was an apparent admirer of the Proud Boys (several of whom have been charged for their conduct on January 6), and sent a boastful post regarding his unlawful entry into the Capitol. But he also admonished

others not to be destructive or fight with officers, cooperated fully from an early stage with federal authorities, and did not personally engage in violence or property destruction.

Bennett stands before this Court to be sentenced on a misdemeanor conviction, but his conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed.

## II.  Factual and Procedural Background

*The January 6, 2021, Attack on the Capitol*

To avoid exposition, the government refers to the general summary of the attack on the Capitol in ECF No. 22, at 1-3. As this Court knows, a riot cannot occur without rioters, and each rioter's actions—from the most mundane to the most violent—contributed, directly and indirectly, to the violence and destruction of that day.

*Bennett's Role in the January 6, 2021, Attack on the Capitol*

According to evidence obtained from Facebook, on November 9, 2020, Bennett commented on a Facebook post, "Stop the steal! We love all no matter the age, race, sex, or political views if you feel something was wrong with this election please like and share!" In the weeks that followed, he posted and shared others' communications and conspiracy theories about how the election was fraudulent. On January 4, 2021, he posted to his Facebook page, "You better be ready chaos is coming and I will be in DC on 1/6/2021 fighting for my freedom!," as reflected in this screenshot from Facebook records pertaining to his account:

> You better be ready chaos is coming and I will be in DC on 1/6/2021 fighting for my freedom! #FIGHTBACK 🙏🙏 for Lin Wood and his family! PS. #BidensLaptopMatters #FUCKCANCELCULTURE #FUCKANTIFA #FUCKCOMMIESCUM #FUCKCHINA #STOPTHESTEAL This is my __line__ ether you with me or against me FAFO! Keep thinking I'm crazy!   Remember these dates 1/6, 1/11, 1/12
> https://www.fox5dc.com/news/dc-says-no-guns-allowed-during-maga-election-protest
> MAGA Caravan heading from Cali to DC credit to the person who posted this pic in my discord chat they know who they are!

On January 6, 2021, Bennett made his way to the Capitol grounds and began livestreaming video to his Facebook page from outside the building at approximately 1:00 p.m.  The video shows he situated himself within the growing crowd on the West Front of the Capitol, where individuals were engaging in a variety of conduct.  As captured during this early stage of the Capitol attack, some conversed peacefully with a defensive line of police officers that was growing increasingly outnumbered, and chanted supportive things such as, "we support the blue."   But others taunted the officers with chants of "do your job," and sporadically threw objects at them.  Someone near Bennett exhorted others to "move forward."   Bennett joined chants of "U.S.A."   He yelled at an officer at an elevation who was aiming a less-than-lethal munition rifle at the growing mob, "What, are you gonna shoot?"

During the course of Bennett's approximately 25-minute video, the crowd grew louder, more restless, and more raucous.  At approximately the 20:40 mark, a bang sounded from a less-than-lethal munition U.S. Capitol Police had deployed.  Near the end of the video, Bennett captured individuals tussling with officers and becoming increasingly violent as officers tried to hold their fragile line.  All this reflects what Bennet saw before he made the decision to enter the Capitol itself.

Video evidence shows that at approximately 2:12 p.m., rioters breached the Capitol's Senate Wing Door.  At  2:14 p.m., Bennett unlawfully entered there along with hundreds of other individuals.  By the time he entered, windows on either side of the doorway had been smashed,

and rioters began cascading through both the doorway and the windows. A few seconds after entering, he pumped his fist for a moment and embraced a woman who unlawfully entered the doorway shortly after him. At approximately 2:17 p.m., Bennett posted on Facebook, "We in this bitch."

Over the course of approximately 29 minutes beginning at 2:17 p.m., Bennett livestreamed three additional videos from inside the building. During at least two points in those videos, Bennett admonished others not to be destructive inside the Capitol. At another point, he admonished others not to fight with officers. He captured rioters swarming into the Capitol Crypt, chanting "our house" and "stop the steal," and screaming at police officers who quickly became woefully outnumbered. Officers had no choice but to fall back.

Bennett joined multiple chants of "U.S.A." inside the building. At several points, he turned the camera on himself and captured himself wearing a hat with the letters "FAFO"—an abbreviation of a slogan, "F*** Around and Find Out," popular among the Proud Boys, a far-right group—as depicted in this screenshot:



Bennett moved with the stream of the mob through multiple parts of the Capitol, including the Rotunda, Statuary Hall, and the vicinity of the Speaker's Lobby. He captured rioters attempting to breach doors near the Speaker's Lobby and the audio of the gunshot that fatally wounded another rioter. After hearing the shot, Bennett rushed to the area of that incident, and screamed at officers, "You f***ing killed her!" He admitted being emotionally shaken up and leaving the building shortly after.

There is no evidence Bennett was violent or destructive on the grounds of or inside the Capitol.

On January 11, 2021, the Federal Bureau of Investigation ("FBI") obtained a search warrant for Bennett's residence in Columbia, Maryland. During the execution of the warrant, the FBI recovered the hat bearing the "FAFO" slogan that Bennett wore inside the Capitol. Following the search, Bennett voluntarily interviewed with the FBI, admitted that he unlawfully entered the Capitol on January 6, 2021, and according to the FBI, admitted it was "wrong to be inside the building." He also provided the unlock code of his cellphone to the FBI so FBI could search the device, and has been entirely cooperative with the government's investigation since his arrest on January 26, 2021. Bennett also submitted to a second interview with the FBI after his arrest, during which he was forthcoming.

Upon further investigation, the FBI found that while Bennett attempted to contact a Maryland chapter of the Proud Boys about becoming a member, it did not find evidence that Bennett is a member of or associate of any organized chapter of the Proud Boys.

Bennett knew at the time he entered the Capitol that he did not have permission to enter the building and he paraded, demonstrated, or picketed inside the building. ECF 22 (Statement of Offense at ¶¶ 8-12); Presentence Report ("PSR") at 5-6.

*The Charges and Plea Agreement*

On January 21, 2021, Bennett was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1)-(4), and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On January 26, 2021, he was arrested after self-surrendering to the FBI in Washington, D.C. On March 17, 2021, Bennett was charged by Information with four counts, violations of 18 U.S.C. §§ 1752(a)(1) and (2), and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On July 22, 2021, he pleaded guilty to Count Four of the Information, which charged a violation of 40 U.S.C. § 5104(e)(2)(G). In his plea agreement, Bennett agreed to pay $500 in restitution to the Department of the Treasury.[1]

### III. Statutory Penalties

The defendant now faces sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559(a)(7); U.S.S.G. §1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). Some of the factors this Court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6).

---

[1] The actual payee of the restitution should be the Architect of the Capitol, as indicated in the PSR at 19.

### A. The Nature and Circumstances of the Offense

The attack on the Capitol on January 6, 2021, is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events. So too does the conviction this defendant now faces. Picketing, demonstrating, or parading at the Capitol as part of the riot on January 6 was not like picketing at the Capitol some other day, without other or with relatively few rioters present.

All defendants should be sentenced based on their individual conduct. But this Court should note that each individual person who entered the Capitol on January 6 did so under the most extreme of circumstances, and Bennett is no exception.

Bennett began livestreaming a near-25-minute-long video from outside the Capitol at 1:00 p.m., and positioned himself on the West Front. As this video shows, it would have been evident to any reasonable person that the crowd massed there was devolving into a riotous mob. Bennett captured objects sporadically being thrown at officers, people chanting "do your job" at them, the bang from a less-than-lethal munition, and rioters growing increasingly loud and angry and beginning to fight officers. Despite what he witnessed about the nature of this event—and all the other things he would have likely observed, such as more extensive fighting with officers and the deployment of chemical irritants later on—Bennett still unlawfully entered the building. Further, he certainly would have seen evidence of the violent breach and smashing of windows at the Senate Wing Door just two minutes before his entry there. Make no mistake, neither Bennett nor any other rioter was a mere tourist that day.

Additionally, while looking at a defendant's individual conduct, we must assess such conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, including: (1) whether, when, and how the defendant entered the Capitol building; (2) whether the defendant engaged in any violence or incited violence; (3) whether the defendant engaged in any acts of destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored, law enforcement; and (9) whether the defendant otherwise exhibited evidence of remorse or contrition. While these factors are not exhaustive or dispositive, they help to place each individual defendant on a spectrum as to their fair and just punishment.

Bennett's participation in the riot was not made on a whim. From Election Day until January 6, 2021, he communicated through Facebook multiple times about the need to "Stop the Steal" and his and others' belief the election was fraudulent. He believed he needed to travel to Washington on January 6 to "fight[] for my freedom!" He observed the crowd on the West Front escalating to a violent mob, yet still joined it to unlawfully enter the building, briefly pumping his fist and later boasting, "We in this bitch." While he commendably admonished others not to be violent or destructive inside, he observed countless acts of disorderly conduct and police being overwhelmed, and still remained in the building for over a half-hour—not a short period—until just after the fatal shooting of the other rioter.

The government has no evidence that Bennett engaged in any violence or destruction of property. Multiple times, he admonished rioters not to fight with officers or be destructive, which is commendable. Nor does the government have reason to believe Bennett destroyed evidence.

To the contrary, he consented to an additional search of his cellphone to access additional data following the execution of a prior search warrant for that phone. He complied with both of FBI's requests for interviews. He also consented to checking in daily with FBI between the date of the search-warrant execution at his home and his self-surrender and arrest in Washington, D.C.

To his credit, Bennett expressed a very early desire to "get past" this prosecution and plead guilty. However, while Bennett admitted to FBI in January that it was "wrong to be inside the building," it is unclear whether he expressed remorse to the U.S. Probation Officer who prepared the presentence report. *See* PSR at 7 (Bennett "accepted responsibility for his criminal conduct in the instant offense by accepting the elements of the count of conviction and concurring with the factual summary as recited by the government at the time of his guilty plea," but "made no further statement about his criminal conduct on the advice of counsel").

The nature and circumstances of the offense supports a sentence of incarceration. However, for misdemeanor defendants who, like Bennett, engaged in conduct that was less egregious considering the nonexclusive factors listed above, the government is more likely to recommend a more lenient sentence.

### B. The History and Characteristics of the Defendant

As set forth in the PSR, Bennett's criminal history consists of five criminal convictions from 2003-11, all of which involved property and drug-possession crimes. For his "Theft Less Than $500 Value" conviction in 2005, he received a sentence of "18 months custody," all suspended. PSR at 8-9. Due to the staleness of these offenses, he would likely have zero points if the Sentencing Guidelines did apply to his offense of conviction. USSG § 4A1.2(c)(2). Accordingly, he would be in Criminal History Category I. USSG §§ 4A1.1, 5A. Bennett is a

general manager at a casual, family chain restaurant, and will remain employed at sentencing. This factor supports a more lenient sentence.

The government also notes that from an early point in the case, through his attorney, Bennett expressed a desire to plead guilty, acknowledge his conduct, and promptly resolve and "get past" his case. When recommending an appropriate sentence, the government gives significant weight to Bennett's early resolution of this case.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the Capitol building and grounds, and all that it involved, was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[2] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases arising out of the riot on January 6, 2021, including misdemeanor cases. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-00238 (TFH), Tr. at 3 (As Judge Hogan noted, "As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually – should be expected.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir.

---

[2] FBI Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021) (hereinafter "FBI Director Wray's Statement"), available at: https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf.

10

2010). The demands of general deterrence weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the transfer of power. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-00188 (RDM):

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70.

The gravity of these offenses demands deterrence. This was not a protest. *See id.* at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights."). And it is important to convey to future rioters and would-be mob participants—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

Bennett's conduct highlights the need for specific deterrence as well. In his pre-riot post on Facebook and on the hat he wore to the Capitol, he invoked the truculent "FAFO" rhetoric of the Proud Boys, a group he apparently admires and inquired about joining. His boast of "We in this bitch"—despite knowing full well that his and the other rioters' incursion was unlawful—is

troubling, and he disregarded the escalating violence brewing all around him on the West Front and the destruction that had already occurred when he entered the Senate Wing Door.

The ambiguity of Bennett's contrition also underscores the need for his own specific deterrence. This factor favors incarceration.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, to assault on law enforcement officers, to conspiracy to corruptly interfere with Congress. Each offender must be sentenced based on his or her individual circumstances, but with the backdrop of January 6 in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lesser end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021, were not minor crimes.  A probationary sentence should not necessarily become the default.  Indeed, the government invites the Court to join Judge Lamberth's admonition that "I don't want to create the impression that probation is the automatic outcome here because it's not going to be." *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19.  At this time, no unwarranted sentencing disparities exist, nor does the government's request create one.

While the number of sentenced defendants is low, we have already begun to see meaningful distinctions between offenders. Those who engaged in felonious conduct are generally more dangerous, and thus, treated more severely in terms of their conduct and subsequent punishment. Those who trespassed, but engaged in aggravating factors, merit serious consideration of active

incarceration. While those who trespassed, but engaged in less serious aggravating factors, deserve a sentence more in line with minor incarceration or home confinement.

After a review of the applicable § 3553 factors, the government believes that Bennett's conduct falls in the latter category. Nevertheless, he invoked pugnacious rhetoric in posting his intention to travel to Washington on January 6, wore the "FAFO" hat to the Capitol, boasted of his trespass, and unlawfully remained for about 30 minutes inside the building. Thus, he should not be compared to those who obtained just a probationary sentence.

## V.     Conclusion

Sentencing here requires that the Court carefully balance the various factors set forth in 18 U.S.C. § 3553(a). As detailed above, some of those factors support a sentence of incarceration and some support a more lenient sentence. Balancing these factors, the government recommends that this Court sentence Bennett to three months of home confinement, three years of probation, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his early acceptance of responsibility. Additionally, such a sentence recognizes that some, but not all of the factors enumerated in Section IV.A., above, apply to his case. It also allows continued monitoring of Bennett in the event of future participation in similar conduct—a concern occasioned by the myriad conspiracy theories and false statements about the election in his Facebook communications and his apparent affinity for the Proud Boys and their combative, baneful rhetoric.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY

By:  /s/ Seth Adam Meinero
SETH ADAM MEINERO
Trial Attorney
Detailee
United States Attorney's Office for the
 District of Columbia
D.C. Bar No. 976587
202-252-5847
Seth.Meinero@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 21, 2021, I served a copy of the foregoing on all parties to this matter as listed in the Court's Electronic Case Files system.

/s/ Seth Adam Meinero
SETH ADAM MEINERO
Trial Attorney
Detailee